IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDRE RHODES,

        Plaintiff,                       No. CIV S-06-1715 MCE EFB PS

    vs.

ELECTRONIC DATA SYSTEMS CORPORATION,

                                 FINDINGS & RECOMMENDATIONS

        Defendant.

_____/

        This case, in which plaintiff is proceeding *in propria persona*, was referred to the undersigned under Local Rule 72-302(c)(21), pursuant to 28 U.S.C. § 636(b)(1). The matter is currently before the court on defendant's motion for summary judgment. The motion, calendared for hearing on May 2, 2007, was taken under submission without oral argument pursuant to Local Rule 78-230(h). Plaintiff's cross-motion for summary judgment was also submitted without oral argument, and is addressed herein. Having considered all submitted papers, the court issues the following findings and recommendations.

////

////

////

////

1

## I. BACKGROUND

Defendants removed this action from state court on August 3, 2006. On November 1, 2006, defendant Michael Jordan's motion to dismiss pursuant to Rule 12(b)(6) was granted,[1] and Electronic Data Systems Corporation ("EDS") was left as the only remaining defendant. EDS provides information technology and business process outsourcing services to clients in diverse industries and various governmental entities.

Plaintiff, a former employee of EDS, initiated this action in state court, alleging wrongful termination and unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended. After removal, on October 10, 2006, plaintiff filed an amended complaint upon which this action is proceeding.[2] The amended complaint includes a claim for retaliation in violation of Title VII.

Plaintiff's claims arise from his former employment with defendant EDS. The undisputed facts in this case are as follows. Plaintiff commenced full-time employment with EDS around May 2005, working as a key data entry clerk. *See* Defendants's Statement of Undisputed Facts ("SUF"), nos. 1-2 (based on plaintiff's deposition testimony).[3] EDS

---

[1] Michael Jordan, the chief executive officer of Electronic Data Systems Corporation, was named as a defendant in the original complaint.

[2] In filing the amended complaint, plaintiff failed to comply with Fed. R. Civ. P. 15(a), because an answer was already on file and he did not seek leave of court to amend. Defendant EDS filed a non-opposition to plaintiff's improper filing of the amended complaint, and because the court would have granted leave to amend had plaintiff properly sought it, the court deems the lodged amended complaint as filed. *See Ritzer v. Gerovicap Pharmaceutical Corp.*, 162 F.R.D. 642, 644-45 (D. Nev. 1995).

[3] The undisputed facts in this section are based on Defendant's Statement of Undisputed Facts, filed within its motion. Plaintiff did not file a Statement of Undisputed Facts in response to Defendant's Statement as required by Local Rule 56-260. *See* L.R. 56-260 (provides that "[a]ny party opposing a motion for summary judgment . . . shall reproduce the itemized facts in the Statement of Undisputed Facts, and admit those facts that are undisputed and deny those that are disputed . . . ."). All of the facts in Defendant's Statement of Undisputed Facts are undisputed because plaintiff failed to "present specific facts demonstrating that there is a factual dispute . . . ." *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

terminated plaintiff's employment in January 2006. *Id.*, no. 4.

According to plaintiff, an EDS employee charged with training new employees, Alton Moore, informed plaintiff about a variety of subjects during an employee training session. *Id.*, no. 8. In particular, plaintiff claims that Mr. Moore taught him about the "Willie Lynch System" used by corporate America to pin one minority against the another, and about a purported EDS policy that rewards employees with one million dollars when they are told by a supervisor in response to a question that the employee "does not need to know." *Id.*, nos. 8, 10, 11. According to plaintiff, when an employee is told "you don't need to know" by a manager, the employee can either provide his "million dollar response" – i.e., "you don't need to know could be worth one million dollars," or he could "hold it under [his] hat and then work his way up the ranks just to see who's paying attention and who knows company policy." *Id.*, no. 12. Plaintiff refers to this purported policy as the "you don't need to know" company policy, and has never heard of anyone who actually collected money pursuant to it. *See* Declaration of Andre Rhodes in Support of Plaintiff's Motion for Summary Judgment ("Rhodes Decl."), at ¶ 2; SUF, nos. 11, 13.

While employed with EDS, plaintiff asked several supervisors to give him information concerning past and present EDS employees. SUF, no.15. Plaintiff claims he wanted this information in order to learn about their performance, among other things. *Id.* The supervisors declined to give plaintiff this information because it was "personal employee information." SUF, no. 17. Around this time, plaintiff also asked a co-worker if she could show him how to use certain networking software, which plaintiff claims provides access to a variety of company and employee information. SUF, no. 18. Plaintiff claims he wanted this information because "information is power. . ., the software puts you in charge of the whole room," and helps you to "outmaneuver[] everyone in that room in business politics." *Id.* When a supervisor told plaintiff that he did not need to know how to use the software, plaintiff claims the "you don't need to know" policy was triggered, entitling him to one million dollars. SUF, no. 19.

3

At a staff meeting on or around January 5, 2006, plaintiff asked another supervisor for access to the software. SUF, no. 20. The supervisor denied his request, and plaintiff later sent a message via electronic mail to his supervisors and some other employees, accusing several recipients of lying and expressing his anger about not having his questions answered. SUF, no. 22; Declaration of Anthony S. Brill in Support of Defendant's Motion for Summary Judgment ("Brill Decl."), Exhibit C. According to plaintiff's deposition testimony, the purpose of this e-mail was to "smash [his supervisors'] knees in the office brawl." SUF, no. 22. Following this e-mail, plaintiff had meetings with two separate supervisors on January 11 and 13, 2006. SUF, nos. 26, 27. Following these meeting, plaintiff sent two other e-mail messages in which plaintiff referred to the "you don't need to know" policy and informed the recipients that it was "time to run like hell." SUF, nos. 29-31; Brill Decl., Exhibits D, E. During his deposition, plaintiff characterized these dealings with his supervisors as being embroiled in a "fight" and "political battle." SUF, no. 34. On January 20, 2006, plaintiff sent another message to various supervisors in which he informed them that he intended to

> fight this battle, no matter how long it takes, no matter how high up the chain I have to go! You're going to regret the day that you ever picked on mama's little scrub in Data Entry! . . . If you guys don't meet with me when I get in tomorrow and try to compromise, this is going to cost you dearly. Cost you, not the company, not me, but you!'

SUF, no. 39; Brill Decl., Ex. F.

On January 20, 2006, one of the supervisors, Claudia Wainwright, brought this message to the attention of Virginia Giles, Deputy Director for EDS Medi-Cal. Declaration of Virgie Giles in Support of Defendant's Motion for Summary Judgment ("Giles Decl."), at ¶ 4. Ms. Wainwright informed Ms. Giles that she and the other recipients were disturbed by the threatening content of the e-mail. *Id.* Ms. Giles met with plaintiff that same day and notified him that she and the recipients of the message considered it to be threatening and that EDS "took the e-mail as violating its policy against workplace violence." *Id.*, at ¶ 5. Ms. Giles asked plaintiff not to return to the workplace until January 25, 2006. *Id.* Later that day, plaintiff sent

an email to two EDS employees, in which he stated, "I've mapped the place. I know everybody there." SUF, no. 42; Brill Decl., Exhibit G. On January 25, 2006, plaintiff met with Ms. Giles, who informed him that EDS was terminating his employment as a result of his threatening conduct. Giles Decl., at ¶ 6.

In his deposition, plaintiff expressed his belief that EDS terminated him for the sole reason that they were liable to pay him one million dollars pursuant to the "you don't need to know policy." He testified that "it had nothing to do with anything else." SUF, no. 46.

On April 8, 2006, plaintiff sent a letter to the EEOC in which he stated that EDS's reason for terminating him was because his "e-mail seemed threatening." SUF, no. 47; Brill Decl., Exhibit I. Plaintiff then submitted a charge of discrimination to the California Department of Fair Housing and Employment ("FEHA") alleging that EDS retaliated against him for inquiring about the one million dollars purportedly owed him under the "you don't need to know" policy and that EDS had "discriminated against because of [his] race, Black, in violation of Title VII . . . ." SUF, no. 47; Brill Decl., Ex. J. Exhausting his appeals with these agencies, plaintiff filed an action in California Superior Court. *See* Pl.'s Opp'n, at 18, 20.

Defendant has moved for summary judgment on all of plaintiff's claims, i.e., discrimination and retaliation under Title VII, and wrongful termination. Plaintiff has also moved for summary judgment. Having considered all submitted papers, and consistent with the analysis below, the court recommends that defendant's motion be granted and that plaintiff's motion be denied.

**II. MOTIONS FOR SUMMARY JUDGMENT**

    **A. Standards**

Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with no disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Two steps are necessary. First, according to the substantive law, the court must determine what facts are material. Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial. *Id.,* at 248.

When the opposing party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). The moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986).

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).[4] The opposing party must demonstrate that disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*, 809 F.2d at 631. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed facts. *See Anderson*, 477 U.S. at 248.[5] Conclusory statements cannot defeat a properly supported summary judgment motion. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

////

---

[4] The non-moving party with the burden of proof "must establish each element of his claim with significant probative evidence tending to support the complaint." *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted). A complete failure of proof on an essential element of the non-moving party's case renders all other facts immaterial, and entitles the moving party to summary judgment. *Celotex*, 477 U.S. at 322.

[5] A verified complaint may be used as an affidavit in opposition to the motion. *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court should grant summary judgment.

**B. Analysis**

    **1. Defendant's Motion for Summary Judgment**

        **a. Racial Discrimination**

Title VII of the Civil Rights Act of 1964 provides a remedy for employment discrimination based upon race. 42 U.S.C. § 2000e-2(a)(1). "Under Title VII, an employer may not 'discriminate against an individual with respect to his … terms, conditions, or privileges of employment' because of his race." *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 658 (9th Cir. 2002) (quoting 42 U.S.C. § 2000e-2(a)). "This provision makes 'disparate treatment' based on race a violation of federal law." *Id.*, at 658.

To survive summary judgment on his Title VII claim for discrimination, plaintiff must establish a prima facie case for discrimination by showing that: (1) he belonged to a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in their protected class received more favorable treatment. *Aragon*, 292 F.3d at 658 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

////

"Ultimately, the plaintiff's burden is to 'produce some evidence suggesting that [the defendant's] failure to promote [him] was due in part or whole to discriminatory intent.'" *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004)).

If plaintiff succeeds in establishing a prima facie case, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment. *Aragon*, 292 F.3d at 658 (citing *McDonnell Douglas*, 411 U.S. at 802). Once the employer articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to plaintiff to show that the employer's articulated reasons were merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). "Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (citations omitted).

The establishment of a prima facie case is not burdensome. The Supreme Court has stated:

> The burden of establishing a prima facie case of disparate treatment is not onerous. . . . [T]he prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

*Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981) (citations and footnote omitted).

Here, although the standard of production to establish a prima facie case for discrimination is minimal, plaintiff has failed to meet it. Although not alleged in the amended complaint, plaintiff alleged in his FEHA complaint that he is an African American, *see* Brill

8

Decl., Ex. J, who suffered an adverse employment action.  However, he has presented no evidence of a discriminatory motive or pretext with regard to his termination.  Nor has he submitted any evidence that other similarly situated employees who were not African American were treated differently.

The court construes the document filed by plaintiff entitled, "Cross Motion to Defendants [*sic*] Objection to Plaintiffs [*sic*] Motion for Summary Judgment & Plaintiffs [*sic*] Objection to Defendants [*sic*] Motion for Summary Judgment," as his opposition to defendant's motion.  The opposition is devoid of any admissible evidence pointing to a genuine issue for trial, and fails to comply with applicable Federal and Local Rules.  Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or [otherwise] . . . must set forth specific facts showing that there is a genuine issue for trial."); L.R. 56-260 ("Any party opposing a motion for summary judgment . . . shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular [evidence] relied upon in support of the denial.").

Plaintiff has not contested any of the facts set forth in defendant's Statement of Undisputed Facts (which are drawn largely from plaintiff's own deposition testimony), nor has he presented his own separate "Statement of Disputed Facts."  More importantly, in opposing defendant's motion, plaintiff has pointed to no material facts or genuine issues to be resolved at trial.  Indeed, he has presented *no* evidence demonstrating a discriminatory motive or pretext for discrimination in defendant's termination of his employment.

Rather, the opposition contains numerous, unsworn conclusory statements, as well as several attachments without any explanation as to whether or not they contain evidence showing that there is a genuine issue for trial.  "[A] party may not prevail in opposing a motion for summary judgment by simply overwhelming the district court with a miscellany of unorganized

9

documentation." *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Despite the disorganized nature of plaintiff's opposition, the court has reviewed both it and the attachments and concluded that they do not contain any evidence showing there is a genuine issue for trial.[6]

A complete failure of proof on an essential element of the nonmoving party's case renders all other facts immaterial, and entitles the moving party to summary judgment. *Celotex*, 477 U.S. at 322. Given plaintiff's failure to present any evidence to support a prima facie case for racial discrimination under Title VII, defendant's motion for summary judgment must be granted. *See Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002) (stating that a plaintiff's failure to offer evidence in support of an element of his Title VII claim must result in summary judgment for the defendant).

Further, plaintiff has not even raised the issue of whether or not defendant's reason for firing him – i.e., for engaging in bizarre conduct that EDS perceived as threatening – was a pretext for discrimination. *See* Giles Decl., at ¶¶ 4-6 (declaring that recipients of plaintiff's e-mails perceived them as threatening and that EDS considered them to be violations of EDS's policy against workplace violence). Failure to raise this issue and present any evidence relevant thereto militates in favor of granting defendant's motion for summary judgment. *See Hashimoto*

---

[6] The attachments to plaintiff's opposition include the following: (1) EDS's objections to Plaintiff's Evidence in Support of his Motion for Summary Judgment; (2) the complaint filed by plaintiff with the EEOC; (3) the "notice of case closure" from the California Department of Fair Employment and Housing; (4) EDS's Responses and Objections to Plaintiff's Request for Production of Documents; (5) various documents that purport to set forth EDS company policy; (6) the Declaration of Virgie Giles *in Support* of EDS's Motion for Summary Judgment (emphasis added); (7) EDS's Responses and Objections to Plaintiff's Interrogatories to be Answered by Alton Moore; (8) a document entitled "Summary: The Art of Business Politics at EDS. Who's More Valuable?" apparently authored by plaintiff; (9) a printout purporting to show statistics on plaintiff's work performance over a seven-month period; (10) numerous documents previously filed with the court, including the first amended complaint, and plaintiff's own motion for summary judgment; (11) a message from plaintiff to EDS personnel sent via electronic mail on January 20, 2006, discussing among other things, plaintiff's view of his entitlement to money under the "you don't need to know" policy; and (12) a printout entitled "Dimensions of Excellence" apparently related to an EDS training program.

*v. Dalton*, 118 F.3d 671, 680 (9th Cir.1997) (affirming summary judgment when employee made no effort to demonstrate facially neutral explanation was pretextual); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir.1994) (plaintiff must produce "specific, substantive evidence of pretext" to avoid summary judgment); *accord*, *Godwin v. Hunt Wesson*, *Inc.*, 150 F.3d 1217 at 1221(9th Cir. 1998) (circumstantial evidence of pretense must be "specific" and "substantial.").

### b. <u>Retaliation Claim</u>

A suit for retaliation may also be brought under Title VII which provides in part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). This section protects an employee or former employee from retaliation for engaging in a protected activity, such as opposing any practice made an unlawful employment practice by Title VII, or participating in any manner in an investigation, proceeding, or hearing under Title VII. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003).

To establish a prima facie case for retaliation, plaintiff must demonstrate that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between his activity and the employment decision. *Stegall*, 350 F.3d at 1065-66. If plaintiff makes this initial showing, then the burden shifts to the employer to articulate a legitimate reason for the adverse action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). "Only then does the case proceed beyond the summary judgment stage." *Id.*

Here, we do not even reach the issue of pretext because plaintiff has presented no evidence that he engaged in a "protected activity" within the meaning of Title VII. To constitute a "protected activity," a complaint, grievance, or claim must oppose Title VII violations. *See*

11

*Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988); *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) (defining "protected activity" as protesting or otherwise opposing unlawful employment discrimination directed against employees protected by Title VII).

In this case, plaintiff did not file a complaint with the EEOC or FEHA until three months following his termination. *See* Brill Decl., Exs. I, J. Plaintiff has presented no evidence that he ever filed a charge of discrimination with the EEOC or FEHA prior to his termination. Likewise, he presented no evidence that he ever voiced any allegations of unlawful discrimination to anyone prior to his termination. In fact, plaintiff testified during his deposition that the only reason EDS fired him was to avoid paying him one million dollars under the "you don't need to know" policy, and for no other reason, including that of race. Inquiring about EDS's purported one million dollar "you don't need to know" policy is not a protected activity within the meaning of Title VII. Plaintiff's admission highlights his inability to present evidence of a causal connection between plaintiff's termination and any activity protected under Title VII. Accordingly, defendant's motion for summary judgment must be granted as to this claim.

### c. **Wrongful Termination**

Plaintiff does not specify whether his claim for "wrongful termination" is a reiteration of his Title VII discrimination claims, or whether he intends it to be a separate cause of action under state law. For the reasons discussed above, assuming this claim is part of plaintiff's Title VII claim, defendant is entitled to summary judgment.

Assuming it is a claim for wrongful termination made pursuant to common law for violation of public policy, defendant is entitled to summary judgment on that claim as well. **"**In order to sustain a claim of wrongful discharge in violation of fundamental public policy, a plaintiff must prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." *Turner v. Anheuser-Busch*, 7 Cal.4th 1238, 1256 (1994). Tort claims for wrongful discharge typically arise when an employer retaliates against an employee for (1) refusing to violate a statute, (2) performing a

12

statutory obligation, (3) exercising a statutory right or privilege, or (4) reporting an alleged violation of a statute of public importance. *Id.* (citations omitted).

Here, plaintiff fails to identify any public policy that his discharge may have violated, let alone present any evidence showing any public policy was violated. Further, as discussed above, he has presented no evidence to support a claim of retaliation or discrimination under Title VII. Defendant is entitled to summary judgment as to this claim.

Accordingly, the court recommends that defendant's motion for summary judgment be granted in its entirety.[7]

## 2. **Plaintiff's Motion for Summary Judgment**

Plaintiff initially filed a motion for summary judgment on August 10, 2006, which was vacated without prejudice and ordered to be heard at a later date once a scheduling order issued. Plaintiff then filed an amended motion for summary judgment on November 16, 2006.

Plaintiff supports the amended motion with an inadmissible declaration in which he states the following: (1) On January 15, 2006, plaintiff called EDS employee, Alton Moore, to inquire about EDS's one million dollar "you don't need to know" company policy because he had been told "you don't need to know" by one of his superiors; (2) a month later he was wrongfully terminated; (3) EDS supervisor, Virgie Giles, told plaintiff he was being separated from the company for sending threatening e-mails; (4) when C.E.O. Michael Jordan declined to reinstate plaintiff's employment upon plaintiff's request, plaintiff went to the EEOC, which later issued him a right to sue letter based on Title VII of the Civil Rights Act of 1964, as amended. *See* Rhodes Decl., at ¶¶ 2-6.

////

////

---

[7] In light of the above recommendation that defendant's motion for summary judgment be granted, defendant shall inform the court within ten (10) days whether it no longer wishes to pursue collection of the sanctions ordered by the court on December 21, 2006.

13

Defendant cites to numerous procedural defects with the motion and the supporting declaration. Among them are plaintiff's failure to include a Statement of Undisputed Facts, his failure to properly execute his declaration, and his failure to articulate a basis for the motion.

Even assuming these defects were non-existent, the court must recommend denial of plaintiff's motion for summary judgment. Plaintiff's motion recites no relevant facts, other than those set forth above, and contains no reference to applicable legal authority or evidence demonstrating that he is entitled to summary judgment. It is not the court's duty to "paw over the files without assistance from the parties." *Orr v. Bank of Am.*, 285 F.3d 764, 775 (9th Cir. 2002) (quoting *Huey v. UPS, Inc*., 165 F.3d 1084, 1085 (7th Cir. 1999)). Even considering everything plaintiff has presented to the court, the court finds that plaintiff has failed to even identify genuine material issues, let alone explain why he is entitled to summary judgment thereon. To the contrary, for the reasons previously stated, the record before the court demonstrates that summary judgment must be entered in favor of defendant. Accordingly, the court recommends that plaintiff's motion for summary judgment be denied.

### III. CONCLUSION

In accordance with the foregoing, IT IS RECOMMENDED that:

1. Defendant Electronic Data System's motion for summary judgment be granted;

2. Plaintiff's motion for summary judgment be denied; and,

3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the

14

1  District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*,
2  951 F.2d 1153, 1157 (9th Cir. 1991).
3  DATED:   July 2, 2007.

                              EDMUND F. BRENNAN
                              UNITED STATES MAGISTRATE JUDGE